# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN TAPIA, | 1:06cv0791 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff Ruben Tapia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 28, 2006, the Honorable Anthony W. Ishii reassigned the case to the Honorable Lawrence J. O'Neill for all purposes. Due to the elevation of Judge O'Neill to United States District Judge, the action was reassigned to the undersigned on July 19, 2007.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed for disability insurance benefits and supplemental security income on September 2, 2003, alleging disability since June 13, 2002, due to diabetes mellitus and pain in his legs.  AR 69-71, 149-158, 295-297.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 47-50, 52-56, 57.  On September 1, 2005, ALJ Michael J. Haubner held a hearing.[3]  AR 311-340.  On November 22, 2005, ALJ Haubner denied Plaintiff's claims.  AR 11-18.  The Appeals Council denied review on April 21, 2006.  AR 6-9.

<u>Hearing Testimony</u>

On September 1, 2005, ALJ Haubner held a hearing in Fresno, California.  Plaintiff appeared with his attorney, Robert Christenson.  Vocational expert ("VE") Thomas C. Dachelet also appeared and testified.  A Spanish interpreter assisted with the testimony.  AR 311.

Plaintiff testified that he was born in 1963 and completed the second grade.  AR 323.  He cannot speak, understand, read or write English.  He can read and write a little in Spanish.  AR 324.  He testified that he last worked in June or July 2002, and his application stated June 13, 2002.  AR 324.  He testified that he was not drinking alcohol, but when pressed, he stated that he had a beer about five days ago because of the pain.  AR 325-326.

Plaintiff lives with his wife and four children.  His wife does not work, but does not receive disability.  He does not have a driver's license and does not drive.  He explained that he does not drive because he does not have a license and because his eyesight is bad.  AR 327.  Plaintiff was prescribed glasses but can see okay without them.  AR 327.  During the day, he sits for a while, stands for a while and sleeps for a while.  AR 327.  He can brush his teeth, shave, dress, bath and feed himself.  AR 328.  He prepares meals, on average, once a day.  AR 328.  He testified that he does not do the dishes, but when pressed, he said he did dishes that day and that

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] A prior hearing was held in May 2005, but was continued to allow Plaintiff to obtain representation.

he does them two to three times per week. AR 329. He does not make the bed, do laundry, or take out the trash. He goes to church once a week, but sometimes skips. AR 330.

Plaintiff first testified that he could not lift anything, but then stated that he could lift about six pounds. AR 332. He could stand for about 15 minutes before needing to sit, and could walk one-quarter to one-half of a mile. AR 332. He takes medications and has had the side effect of anxiousness for about seven years. AR 333. He takes pills and shots for his diabetes and has to follow a special diet. He follows his diet 100 percent. AR 333.

Plaintiff believed he could concentrate for zero to 15 minutes at a time. AR 339.

ALJ Haubner then questioned VE Dachelet. For all hypotheticals, the ALJ asked the VE to assume a person of Plaintiff's age, education, language and background. For the first hypothetical, he asked the VE to assume a person unable to do field work, but who could walk for less than one-quarter of a mile, and stand for ten minutes at a time. This person could lift 100 pounds occasionally, 50 pounds frequently, could stand/walk less than two hours out of eight hours, and needed to alternate sitting and standing. AR 335. He could sit less than six hours out of eight. The VE testified that because the sitting and standing limitations do not accumulate to an eight hour day, this person could not perform Plaintiff's past work or any other work in the national economy. AR 336.

The person in the second hypothetical could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk at least two hours our of eight, could sit for six hours out of eight, and had an unlimited ability to push and pull. This person had to avoid walking on uneven terrain in unlit areas. This person could not perform Plaintiff's past relevant work, but could perform other work. AR 336-337. The VE identified the sedentary positions of production worker, stuffer, and the light position of parking lot attendant. AR 338.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry six pounds, stand for 15 minutes at a time and concentrate in 15 minute increments. AR 339. This person could not perform any work. AR 339.

Medical Record

Plaintiff received a majority of his treatment from treating physicians Boota Singh Chahil, M.D., and Antonio Durazo, M.D., from Sequoia Family Medical Center. On July 3, 2002, Plaintiff complained to Dr. Durazo of pain in both feet and difficulty sleeping. Plaintiff also reported that he was seeing black spots. He had not worked since June 13, 2002. On examination, he was unable to distinguish "2 pt discrimination" and diagnosed with diabetic neuropathy and diabetic retinopathy. AR 220.

On August 2, 2002, Plaintiff reported that he felt better. He also indicated that he did not know how to use the machine to check his blood sugar. AR 219.

Plaintiff returned for treatment on November 25, 2002, and complained of continued numbness and pain in his feet. He indicated that he did not check his blood sugars at home. On examination, the pulses in his lower extremities were normal. AR 214. He was prescribed neurotonin. AR 214.

On January 13, 2003, treatment notes indicate that Plaintiff wasn't following his diet or checking his blood sugar. AR 212.

Notes from January 28, 2003, indicate that Plaintiff needed a welfare form filled out and that he could not work because of leg pain. AR 211.

On February 11, 2003, Dr. Chahil performed motor nerve conduction studies of Plaintiff's lower extremities. The study was abnormal, showing evidence of mild sensory motor polyneuropathy as seen in diabetes mellitus. There was no evidence of ongoing Axon loss or ongoing lumbar radiculopathy. Examination of both lower extremities was normal. AR 210.

On February 19, 2003, Plaintiff complained of leg pain and pain in the tops of his feet. His gait was normal and he was described as "doing fairly well." Dr. Chahil instructed him to continue neurotonin and return in three months. AR 195.

In May 2003, Plaintiff reported that the pain in his feet had not changed, but indicated that he was better with neurotonin. Dr. Chahil diagnosed with diabetes mellitus, diabetic neuropathy, and resulting leg pain. AR 207. His neurotonin was increased. AR 207.

Plaintiff returned on June 20, 2003, and indicated that he still had pain in his feet but that it was better with pills. Dr. Chahil again described him as "doing better" but with pain. AR 206.

Plaintiff returned to Dr. Chahil in August 2003. He complained of right leg pain after walking and cramps in his right toe. His blood sugar was not controlled. AR 205.

On October 17, 2003, Plaintiff was concerned about his leg pain, but indicated that it was slightly better. Dr. Chahil indicated that he was "doing [a] little better, but still has some pain." His neurotonin was increased. AR 204.

On January 6, 2004, State Agency physician Sadda Reddy, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Reddy opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and/or walk for at least two hours in an eight hour day, and sit about six hours in an eight hour day. He was unlimited in pushing and/or pulling. Plaintiff had to avoid walking on uneven terrain or in unlighted areas due to his diabetic peripheral neuropathy. Dr. Reddy opined that a sedentary residual functional capacity ("RFC") was appropriate given Plaintiff's complaints of pain and his statements as to his activities of daily living. AR 237-248. This opinion was affirmed bu Murray Mitts, M.D., on March 23, 2004. AR 237.

On February 13, 2004, Plaintiff indicated that he still had leg pain and was concerned. His neurotonin was increased and he was instructed to return in three months. AR 194.

In May 2004, Dr. Chahil indicated that Plaintiff was "doing fairly well with neurotonin." AR 262.

On June 23, 2004, Dr. Durazo completed a letter of diagnosis in which he opined that Plaintiff had diabetic peripheral neuropathy and that his symptom was constant pain in both lower extremities. He could walk less than one-quarter of a mile and stand for about 10 minutes. His prognosis was fair as the disease was progressive, and he was "unable to do field work." AR 251.

Also on June 23, 2004, Dr. Durazo completed a Medical Source Statement. He opined that Plaintiff was not impaired in his ability to lift and carry and that he could occasionally lift up to 100 pounds, 50 pounds frequently. He could walk less than two hours in an eight hour day, sit

5

for less than six hours and needed to alternate between sitting and standing.  Plaintiff needed to change position every 15 minutes.  Dr. Durazo opined that Plaintiff's abnormal EMG supported these limitations.  Plaintiff could never climb, but could frequently perform all other postural movements.  Plaintiff had no vision, hearing, communication or environmental restrictions.  Dr. Durazo believed Plaintiff's prognosis was fair.  AR 252-253.

In August 2004, Plaintiff reported that he was concerned with his right leg pain but was doing better.  Dr. Chahil noted that Plaintiff was "doing fairly well" and instructed Plaintiff to continue his neurotonin.  AR 256.

In September 2004, Plaintiff complained of continued back pain and dizziness.  He was diagnosed with diabetes mellitus, diabetic peripheral neuropathy, sciatica and a skin condition.  AR 255.  The treatment notes indicated that he is disabled from work for one year.  AR 255.

In November 2004, Plaintiff reported that his legs hurt more in the cold weather.  The neurotonin was increased.  AR 290.

On July 1, 2005, Plaintiff reported some swelling in his legs but indicated that his pain was "doing ok."  Dr. Chahil prescribed Cymbalta.  AR 277.

Plaintiff continued to complain of pain in both feet on July 29, 2005.  His gait was normal.  Dr. Chahil continued Plaintiff's neurotonin and instructed him to try Elavil.  AR 274.

Plaintiff underwent another motor nerve root conduction study of his lower extremities.  The study was abnormal and revealed evidence of a mild sensory motor polyneuropathy as seen in diabetes mellitus.  There was no evidence of ongoing lumbar radiculopathy and no evidence of compression neuropathy.  AR 293.

ALJ's Findings

ALJ Haubner found that Plaintiff's diabetes mellitus with mild peripheral neuropathy was a severe impairment, but that he retained the RFC to perform sedentary work with no walking on uneven terrain or in unlighted areas.  AR 14. Based on the testimony of the VE and application of Rule 201.23 of the Medical-Vocational Guidelines, the ALJ determined that Plaintiff was not disabled.  AR 17.  In making this finding, he determined that Plaintiff's allegations were not fully credible.  AR 15-16.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)) (diabetes mellitus with mild peripheral neuropathy); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P of Part 404; (4) cannot perform his past relevant work; but (5) is able to perform other work existing in the national economy.  AR 17-18.

Here, Plaintiff argues that the ALJ (1) erred in failing to adopt the opinion of Dr. Durazo; (2) failed to develop the record by sending Plaintiff for a consultive examination; and (3) erred in failing to consider Plaintiff's persistent efforts to obtain relief in evaluating his credibility.

**DISCUSSION**

A.   Dr. Durazo's Opinion

Plaintiff argues that the ALJ should have accepted Dr. Durazo's limitations set forth in the June 23, 2004, Medical Source Statement because the limitations were supported by the medical record.  He also suggests that the ALJ improperly rejected the opinion based on Dr. Durazo's failure to respond to a clarification request.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Orn v. Astrue,* ___F.3d ___ (9th Cir. 2007) (2007 WL 2034287); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In his June 23, 2004, opinion, Dr. Durazo opined that Plaintiff was not impaired in his ability to lift and carry and that he could occasionally lift up to 100 pounds, 50 pounds frequently. He could sit for less than six hours and could walk less than two hours in an eight hour day. Dr. Durazo opined that Plaintiff's abnormal EMG supported these limitations. AR 252-253.

The ALJ noted Dr. Durazo's opinion and correctly stated that the limitations set forth would preclude substantial gainful activity because, as the VE testified, the amount of time Plaintiff could sit and stand/walk did not add up to a total of eight hours. AR 252, 336. The ALJ then rejected Dr. Durazo's opinion in favor of the opinion of Dr. Reddy, the non-examining State Agency physician who opined that Plaintiff could sit for at least six hours and could stand/walk for at least two hours. AR 15, 238.

In order to accept the contradictory non-examining physician's opinion over Dr. Durazo's, the ALJ needed to set out "specific and legitimate reasons supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725. As explained below, ALJ Haubner failed to do so.

The ALJ rejected Dr. Durazo's opinion for two reasons. First, he explained that the "fill-in-the-blanks/check-blocks form" lacked support for the conclusions such as signs, test results, and whether the limitations were based on Plaintiff's subjective complaints or objective findings or observations. AR 15. While such forms should sometimes be rejected, such is not the case here. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion). Although the ALJ states that Dr. Durazo's opinion is not supported by objective test results, Dr. Durazo specifically lists "Abnormal EMG" as the medical test that supports his limitations. AR 252-253. Indeed, Plaintiff had two abnormal EMG tests, one before

and one after Dr. Durazo's opinion and both revealed mild sensory motor polyneuropathy as seen in diabetes mellitus. AR 210, 293. The ALJ downplays the EMG finding by stating that "only" mild sensory motor polyneuropathy was found, yet the ALJ's belief as to what limitations should be attributed to "only" mild sensory motor polyneuropathy is far from a significant and legitimate reason for rejecting Dr. Durazo's opinion.

ALJ Haubner also rejected Dr. Durazo's opinion because he failed to respond to the ALJ's request for clarification. The ALJ stated that he requested information about the signer's speciality and qualifications, an explanation of the specific limitations, an onset date, and how long the condition was expected to last and at what severity level. AR 15. Regarding these facts, the opinion did indicate that Plaintiff's prognosis was fair because his disease was progressive, and specifically stated that he could sit for less than six hours and stand/walk less than two hours. That the opinion did not set out Dr. Durazo's specialty and qualifications or an onset date is not a significant reason for rejecting it. The ALJ also explained that he requested information as to how often Dr. Durazo saw Plaintiff and the approximate dates, if he was part of a treatment team, and the "number and approximate dates that the signers consulted with other team members regarding claimant." AR 15. The ALJ purports to be ignorant as to this information, yet the record shows that Dr. Durazo treated Plaintiff at least thirteen times from approximately September 2002 through March 2005. AR 193, 200, 203, 211-212, 214-215, 220, 224, 259, 260, 261, 287. In addition to Dr. Durazo, Plaintiff also received treatment from Dr. Chahil, who was also at Sierra Family Medical Center. Whether they worked as a team or independently, or whether Dr. Durazo worked in conjunction with another source, is irrelevant to the analysis of a treating source opinion. The ALJ's reasons for requesting additional information are therefore flawed and Dr. Durazo's failure to respond to the request cannot be deemed a specific and legitimate reason for rejecting his opinion.[5]

---

[5] Plaintiff also takes issue with the manner in which the ALJ requested additional information. He points to the portion of the letter that states, in bold and underlined, "...if you choose to respond, it is at your own expense." It further states, "I would request that any such clarification be signed *under penalty of perjury*." AR 174 (emphasis in original). Plaintiff also points to the statement at the bottom of the page that states, in bold, capitalized letters:

NOTICE: ANYONE MAKING A FALSE STATEMENT OR FALSE REPRESENTATION OF

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). Here, the Court has determined that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in rejecting Dr. Durazo's opinion. Further proceedings are therefore required to allow the ALJ to re-analyze the opinion, especially in light of the Ninth Circuit's recent opinion in *Orn v. Astrue,* ___F.3d ___ (9th Cir. 2007) (2007 WL 2034287).

B.   <u>Failure to Develop Record</u>

Next, Plaintiff argues that the ALJ should have ordered a consultive examination because Plaintiff was not seen by a consultive examiner and, by rejecting the treating source, the ALJ was left with the opinion of non-examining, non-treating physician Dr. Reddy.

---

MATERIAL FACT FOR USE IN DETERMINING A RIGHT OF PAYMENT UNDER THE SOCIAL SECURITY ACT SHALL BE GUILTY OF A FELONY. 42 U.S.C. § 408.

Plaintiff argues that the request is an "intimidating letter which chills any response from a busy treating physician." He also suggests that the phrase, "if you choose to respond, it is at your own expense," provides an "out for a physician to otherwise ignore the clarification letter especially as there is a legal threat of a felony lurking in the body of the letter." Opening Brief, at 8. Without deciding whether the letter itself is intimidating and whether such an analysis is relevant to the Court's decision, it does appear inconsistent that the ALJ states "if you choose to respond" in the letter yet faults Dr. Durazo for not doing so. The phrase "if you choose to respond" certainly suggests that a response is optional and the ALJ should not then disregard the opinion solely because he chose not to do so.

11

"A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984)(internal citations omitted).  Here, Dr. Reddy's opinion was contradicted by all other evidence of limitations in the record, including Dr. Durazo's opinion and Plaintiff's testimony.

The Commissioner "has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)(internal citations omitted).  There are some cases, however, that do "normally require a consultative examination," including those in which 'additional evidence needed is not contained in the records of [the claimant's] medical sources,' and those involving an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" *Id.* Where, as here, the ALJ was left with little to no substantial evidence to support his decision once he rejected the treating physician's opinion, he should have ordered a consultive examination.  On remand, whether a consultive examination is necessary will depend on the ALJ's re-analysis of Dr. Durazo's opinion.

C.     <u>Plaintiff's Credibility</u>

Finally, Plaintiff contends that the ALJ improperly evaluated his credibility by failing to consider his persistent efforts to obtain relief from his symptoms of peripheral neuropathy.  He points to the two EMGs in the record and his treatment at Sequoia Family Medical Center from 2000 through 2005 revealing constant complaints of pain to both legs and feet.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The

ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

While SSR 96-7p recognizes that an individual's persistent efforts to obtain treatment can enhance credibility, Plaintiff's treatment does not outweigh the numerous other factors cited by the ALJ. For example, the ALJ cited Plaintiff's poor work history, his evasive demeanor and inconsistent answers at the hearing, and his non-compliance with his medications as factors supporting the credibility finding. These are proper factors in assessing credibility. As explained above, where the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Ruben Tapia and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 1, 2007**                         **/s/ Dennis L. Beck**
                                                                UNITED STATES MAGISTRATE JUDGE